LaCorte, Bundy, Varady & Kinsella
989 Bonnel Court
Union, New Jersey 07083
(908) 810-0500
Attorneys for Plaintiff, Jonathan Wilson

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN WILSON,<br><br>Plaintiff,<br><br>vs.<br><br>BOROUGH OF RED BANK, BOROUGH OF RED BANK POLICE DEPARTMENT, STEPHEN ADAMS, individually and in his official capacity as police officer of Borough of Red Bank Police Department,  MARK F. FITZGERALD, individually and in his official capacity as police chief of the Borough of Red Bank Police Department, JOHN DOES 1-20, a fictious name for presently unknown agents, members, commissioners, chiefs<br>Defendants. | Civil Action No.:<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff, Jonathan Wilson, by and through his attorneys, LaCorte, Bundy, Varady & Kinsella, by way of complaint against the defendants herein states, upon information and belief as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1331 and 143. This Court has supplemental jurisdiction over plaintiff's State Law claims pursuant to 28 U.S.C. § 1367 (a).

2. The venue in this district is proper because, upon information and belief, all defendants either reside in or are located in the districts, and all events took place in the district.

### PARTIES

3. Plaintiff, Jonathan Wilson, is a competent adult, a citizen of the United States, and currently resides at 38 Hemlock Court, Middletown, New Jersey.

1

4. Defendant, Borough of Red Bank, (the "Borough), is and was at all times relevant to this complaint, a municipality organized under the laws of the State of New Jersey.

5. Defendant, Borough of Red Bank Police Department (the "Police Department"), was and at all times relevant to this complaint a division or department of the Borough entrusted with certain responsibilities, among others, enforcing federal, state and local laws and ordinances, and otherwise ensuring the safety of the people and property found within the jurisdictional limits of the Borough.

6. The Mission Statement of the Police Department includes the stated goal of maintaining order, protecting life and property, and respecting the Constitutional rights of all.

7. Defendant, Stephen Adams, is a municipal employee in the position of police officer for the Police Department.

8. Defendant, Mark F. Fitzgerald, is a municipal employee in the position of police chief for the Police Department.

9. John Does 1-20 are fictious names for any and all presently unknown persons who were at all times relevant to this complaint agents, representatives and/or employees of the Police Department, who were involved or in any way responsible for the events described in this complaint. They are being sued both individually and in their official capacities.

## NATURE OF ACTION

10. This is an action for compensatory and punitive damages, for violations of plaintiff's constitutional and civil rights, for assault and battery, for wrongful arrest, for failure to prevent assault and battery, for malicious prosecution, for negligent and intentional infliction of severe physical injury and emotional harm, and for failure to provide medical care.

## GENERAL ALLEGATIONS

11. Situated at the head of the Navisink River, the Borough is a small, 1.7 square mile town, attracting visitors from around the tri-state area with brick paver sidewalks, victorian street lamps, antique shops, galleries, restaurants and boutiques.

12. In addition, throughout the summer months, the Borough hosts numerous festivals, celebrations and street-fairs which draw huge crowds, all to the substantial economic benefit of the Borough.

13. Each June, over a three-day period, the annual "River Fest" Jazz Festival draws in excess of 150,000 music fans to the Borough.

14. Also, the "Kaboom! Fireworks on the Navisink," held in the Borough's downtown/marina section, having grown steadily over the years, has become the largest July 4th fireworks celebration in New Jersey.

15. Promoted by the Borough as a "true celebration of place and country" this annual tradition featuring music, crafts, rides, contests and "award winning fireworks" attracts as many as 170,000 people for what its promoters describe as a day of "family fun."

16. On July 3, 2006, drawn by the prospect of an evening of patriotic music and fireworks, plaintiff, along with several friends, took the train into the Borough to partake in the festivities.

17. What began as a peaceful celebration, became unruly as a result of the inappropriate and destructive behavior of certain individuals in the crowd.

18. According to published media accounts of the events of that evening, following the fireworks display, a series of disturbances, many fueled by excessive alcohol consumption, arose among the huge crowd, requiring a police response, which resulted in more than a dozen arrests throughout the late night and early morning hours on a variety of criminal charges including aggravated assault, disorderly persons and criminal mischief.

19. As this transformation began to occur, it was necessary for members of the Police Department to respond to protect the safety of the public. Such response, however, should have only been directed at those engaged in harmful or illegal behavior.

20. At approximately 11:30 p.m., plaintiff, an innocent bystander, was lawfully present in the crowd with several friends in a parking lot behind the Globe restaurant. At that time, he and his friends witnessed a number of Borough police officers engaged in efforts to break up a fight and disperse an unruly group of people gathered in the area.

21. In redirecting the crowd, the officers became verbally and physically abusive, not only to those individuals involved in the fracas, but also to innocent bystanders such as plaintiff, who were merely present in the area, standing some distance away from the commotion.

22. Although shocked and dismayed by their behavior, plaintiff obeyed the officer's commands to disperse and began walking with his friends towards Broad Street.

23. While departing the scene, in an apparent response to the militant attitude of the officers and the unprofessional manner in which they had forcibly dispersed the bystanders from the area, several individuals in plaintiff's vicinity directed mildly disparaging comments toward the officers.

24. Some time later, after plaintiff walked several blocks from the scene, he and a friend were proceeding lawfully on Broad Street. Suddenly, and without warning, an unmarked black vehicle approached, and a uniformed individual, later identified as defendant, Ptl. Stephen Adams, exited the vehicle. Without explanation, Ptl. Adams charged plaintiff, violently forced plaintiff's hands behind his back and threw him, face-first, to the ground. The unprovoked, wrongful actions of Ptl. Adams caused plaintiff to suffer lacerations of the head and face as well as severe dental injuries.

25. Bleeding profusely from his mouth and face, plaintiff was then wrongfully, and without probable cause, arrested, hand-cuffed, dragged back to the unmarked police vehicle, thrown forcibly into the rear seat, and taken to the police headquarters.

26. At the police headquarters, plaintiff was pushed, shoved and cursed by numerous other police officers. Although cut and bloodied, with obvious facial and dental injuries, plaintiff was held at police headquarters for several hours while his repeated pleas for medical aid were ignored.

27. Plaintiff was neither fingerprinted nor photographed during the booking process.

28. After ignoring his serious medical needs for several hours, plaintiff was finally taken to Bayshore Hospital, where after receiving medical attention, he was released by the police on his own recognizance.

29. While at the hospital, plaintiff complained to officers in attendance that he had been assaulted by Ptl. Adams and requested to return to the police department to identify Ptl. Adams and register a complaint. The officers admonished plaintiff that if he insisted on filing a complaint, they would "kick his ass" and incarcerate him in the Monmouth County Jail. By reason of threat, coercion and intimidation, plaintiff left the Borough and returned home rather than exercising his constitutional rights to file a complaint against Ptl. Adams.

30. Subsequently, Ptl. Adams wrongfully and with intent to harm the plaintiff, falsely charged him with having committed the crimes of aggravated assault and creating a disturbance by enticing others to fight.

31. On or about August 24, 2006, in accordance with the provisions of the New Jersey Tort Claims Act, plaintiff filed a Notice of Claim with the defendants stating the basic facts given risen to the cause of action herein.

32. It has been more than six months from the date that plaintiff's administration tort claims were filed.

## FIRST COUNT

(Against Ptl. Stephen Adams)

### Assault and Battery

33. Plaintiff repeats the allegations of Paragraphs 1-32 inclusive as if set forth fully herein.

34. Defendant, Ptl. Adams, at the time and place aforesaid, assaulted and battered plaintiff with malicious intent and with an aim towards seriously harming the plaintiff, and inflicting severe and serious physical and psychological injury upon him.

35. The injuries which plaintiff sustained as a direct and proximate result of the actions of Adams, have had a detrimental impact on plaintiff's physical and mental well being, caused him great pain and suffering, required him to expend substantial sums of money for medical treatment and will do so in the future. The actions of Ptl. Adams were intentional, wanton, malicious and oppressive, entitling plaintiff to an award of punitive damages.

## SECOND COUNT

(Against Ptl. Adams, the Police Department and
Police Chief Fitzgerald)

### Wrongful Arrest and Malicious Prosecution

36. Plaintiff repeats the allegations contained in Paragraphs 1-35 inclusive as if set forth fully herein.

37. On or about July 3, 2006, the defendants made a complaint falsely accusing the plaintiff of having committed the crimes of aggravated assault and enticing others to fight, in violation of N.J.S.A. 2C:12-1b and N.J.S.A. 2C:33-2, respectively.

38. This prosecution was commenced and instituted by the defendants without basis, and was done maliciously and with intent to harm the plaintiff.

39. As a result of the malicious prosecution by the defendant, the plaintiff was injured in body and mind, prevented from following his customary pursuit and occupation, has suffered greatly in his credit and reputation, and has expended large sums of money in his defense.

## THIRD COUNT

(Against Ptl. Stephen Adams)

### Negligent Harassment, Assault and Misconduct

40. Plaintiff repeats the allegations contained in Paragraphs 1-39 inclusive as if set forth fully herein.

5

41. The aforesaid conduct of Ptl. Adams, was done in an unlawful and negligent manner without any legal just cause and in violation of state and municipal regulations concerning the interaction of law enforcement officers with numbers of the public.

42. At all times relevant herein, Ptl. Adams was acting within the scope of his authority as a police officer of the Borough. The Borough is therefore vicariously liable to the plaintiff.

## FOURTH COUNT

(Against the Borough, Police Department,
Police Chief Fitzgerald and John Does 1-20)

### Failure to Train and Supervise

43. Plaintiff repeats the allegations in Paragraphs 1-42 inclusive as if set forth fully herein.

44. Defendants, the Borough of Red Bank, the Borough of Red Bank Police Department, Police Chief Mark F. Fitzgerald, John Does 1-20, negligently failed to train its officers in fundamental police procedures and protocol of crowd management and control in that:

    a. With full knowledge that as many as 170,000 people would attend the fireworks celebration on July 3, 2006, the defendants failed to have in place a crowd control policy to protect life and property; to maintain public peace and order; and to uphold rights of free speech and assembly.

    b. With full knowledge that a vast crowd would attend the July 3, 2006 fireworks celebration, defendants failed to implement crowd management techniques designed to manage lawful public assemblies before, during and after the event, and failed to coordinate with community and event leaders regarding permit monitoring, and service and consumption of alcohol.

    c. With full knowledge that a vast crowd would be in attendance at the fireworks celebration on July 3, 2006, the defendants failed to conduct past event critiques and perform an adequate risk assessment to develop a clear written operations plan to ensure the safety of those in attendance.

    d. With full knowledge that a vast crowd would attend the fireworks celebration of July 3, 2006, the defendants failed to have in place policies, procedures and/or general strategies on crowd containment, dispersal tactics and arrest procedures.

  e. With full knowledge that a vast crowd would attend the fireworks celebration of July 3, 2006, the defendants, by reason of flawed planning and poor decision-making failed to communicate and brief subordinate officers regarding chain of command and appropriate enforcement actions and tactics, for the purpose of ensuring a measured and effective police response to crowd event issues, and to discourage impulsive or independent actions by its officers, thereby minimizing the risk of police-initiated violence, excessive force and wrongful arrests directed at innocent persons.

  45. The failure to address the foregoing issues through training and supervision and to anticipate the reasonably foreseeable events of the evening of July 3, 2006, constituted deliberate indifference to the constitutional rights of the citizens in attendance and led directly to the application of indiscriminate excessive force by individual members of the Police Department against numerous individuals in the predominately peaceable crowd who, like plaintiff, were assaulted and/or aggressively detained in violation of their constitutional rights of free speech and assembly.

  46. The aforementioned lack of training and supervision represent systematic failures, which are customs and policies of the Borough and the Police Department, and led directly to the wrongful arrest and the unprovoked assault upon the plaintiff, an innocent victim, in violation of his Constitutional rights.

## FIFTH COUNT

(Against the Borough, Police Department,
Police Chief Fitzgerald and John Does 1-20)

### Negligent Hiring

  47. Plaintiff repeats the allegations of Paragraphs 1-46 inclusive as if set forth fully herein.

  48. At no time, either prior to employment of Ptl. Adams or to assignment of duties whereby it was foreseeable that Ptl. Adams would be required to interact with members of the public in a large crowd setting, did the defendants Borough of Red Bank, the Red Bank Police Department, Police Chief Fitzgerald take reasonable steps to ascertain whether Ptl. Adams was emotionally capable of performing such duties and did not have a propensity towards violence or aggressive behavior against individuals he was likely to encounter in those settings.

  49. As a direct and proximate result of the negligent employment and/or hiring by the defendants, plaintiff was assaulted and battered by Ptl. Adams, and suffered severe and

7

permanent physical and psychological injuries, great pain and suffering, great emotional stress and mental anguish, and incurred a substantial deprivation of civil and constitutional rights.

## SIXTH COUNT

(Against all defendants)

### 42 U.S.C. § 1983

50. Plaintiff repeats the allegations of Paragraphs 1-49 inclusive as if set forth fully herein.

51. Defendants, acting under color of state law, willfully, intentionally, knowingly, and concertedly deprived plaintiff of his rights, privileges and immunities secured by the Constitution and the laws of the United States of America, including the Fourth and Fourteenth Amendments, by interalia:

    a. Needlessly unreasonably subjecting the plaintiff to assault and battery;

    b. Wrongfully, and without probable cause, subjecting plaintiff to arrest;

    c. Interfering with plaintiff's right to seek redress for injuries by attempting to cover-up and conceal for defendant officer's conduct;

    d. Combining and conspiring to deprive plaintiff of his constitutional protected rights;

    e. Falsely, maliciously and without probable cause, prosecuting plaintiff;

    f. Denying plaintiff due process of law;

    g. Implementing, maintaining and tolerating policies, practices and customs which resulted in the illegal actions and proximately caused plaintiff's injuries as heretofore alleged.

52. These aforesaid violations are in violation of 42 U.S.C. § 1983 and the constitutional laws of the United States of America.

## SEVENTH COUNT

(Against all Ptl. Adams, the Police Department,
Police Chief Fitzgerald and John Does 1-20)

### Deliberate Indifference to Serious Medical Needs-42 U.S.C § 1983

53. Plaintiff repeats allegations of Paragraphs 1-52 as if set forth fully herein.

54. By deliberately, intentionally, wantonly, and/or recklessly failing to provide for medical care for the seriously injured plaintiff, Jonathan Wilson, while he was in custody, the defendants, the Police Department, Ptl. Stephen Adams and Police Chief Fitzgerald, John Does

1-20, acting individually and together, were deliberately indifferent to plaintiff's serious medical needs.

55. The deliberate indifference to plaintiff's serious medical needs by the above named defendants acting under color of state law deprived plaintiff, Jonathan Wilson, of his rights in violation of the laws of the Eighth and/or Fourteenth Amendments of the Constitution of the United States and in violation of 42 U.S.C. § 1981, 1983, 1985(3), and 1988.

56. As a direct and proximate result of the actions of the above named defendants, plaintiff was severely injured by the use of excessive force and the subsequent deliberate indifference to his serious medical needs. As a result thereof, plaintiff suffered and continues to suffer from serious severe personal injuries as incurred and will in the future incur expense for medical care and treatment, was unable and will unable in the future to attend to his normal business activity and suffered and continues to suffer serious mental anguish, psychological and emotional stress, humiliation, physical pain and suffering, some or all of which may be permanent.

57. The acts and omissions of the above named defendants were intentional, wanton, malicious and oppressive, thus entitling plaintiff, Jonathan Wilson, to an award of punitive damages.

## EIGHTH COUNT

(Against all defendants)

### 42 U.S.C. § 1988

58. Plaintiff repeats the allegations of Paragraph 1-57 inclusive as if set forth fully herein.

59. The actions of the defendants were in violation of the Constitution and the laws of the United States and redress may be had thereunder. However, should such laws or Constitution be inadequate or deficient to compensate plaintiff for the wrongful acts of the defendants, plaintiff is entitled, pursuant to 42 U.S.C. § 1988, to such additional relief as applicable under the constitution and the under the laws of State of New Jersey.

60. Pursuant to the New Jersey Tort Claims Act N.J.S.A. 59:2-2, the defendants, Borough of Red Bank, Borough of Red Bank Police Department, are liable for any such deficiency.

**PRAYER FOR RELIEF**

61. Plaintiff repeats the allegations of paragraphs 1-60 inclusive as if set forth fully herein.

62. Plaintiff demands judgment against all defendants and each of them, jointly and severely as follows:

    a. Where applicable, plaintiff demands judgment for compensatory damages.

    b. Where applicable, plaintiff demands judgment for punitive damages and exemplary damages, and any and all other damages allowed by law.

    c. Plaintiff demands judgment for all equitable and other relief as the Court deems just and proper.

    d. Plaintiff demands judgment of attorney's fees with interests and costs of suit.

LACORTE, BUNDY, VARADY & KINSELLA

By: _____
Robert F. Varady, Esq.

Dated: February 27, 2007

**JURY DEMAND**

The plaintiff demands a trial by jury on all issues so triable.

LACORTE, BUNDY, VARADY & KINSELLA

By: _____
Robert F. Varady, Esq.

Dated: February 27, 2007